**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MEYERS, et al., | CIVIL ACTION NO. 12-2434 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| MITCHELL L. HEFFERNAN, et al., | |
| Defendants. | |

MITCHELL L. HEFFERNAN, et al.,

     Third-Party Plaintiffs,

     v.

STEVEN PATTON, et al.,

     Third-Party Defendants.

STEVEN PATTON, et al.,

     Fourth-Party Plaintiffs,

     v.

RANDAL ROBERGE, et al.,

     Fourth-Party Defendants.

**COOPER**, **District Judge**

The plaintiffs – Michael Meyers, David Rundella, David Bosefski, Scott Kerico, Marc Ambrose, Lisa Macone, Johanna Curley, and Jeffery DePalma – (collectively the "plaintiffs") brought this action against the defendants, Mitchell L. Heffernan and James E. Pedrick (collectively the "defendants" or the "third-party plaintiffs").  The plaintiffs allege that the defendants failed to pay them earned commissions, in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq. (the "WPL") and the Sales Representatives' Rights Act, N.J.S.A. 2A:61A-1 et seq. (the "SRRA").  (See dkt. entry no. 1, Compl. at 1.)  The third-party plaintiffs filed a third-party complaint against the third-party defendants, Steven Patton and Paul Impagliazzo (collectively the "third-party defendants" or the "fourth-party plaintiffs"), pursuant to Federal Rule of Civil Procedure ("Rule") 14, for indemnification and contribution in the event they are held liable to the plaintiffs in the main action.  (See dkt. entry no. 34, 3d Party Compl.)  The fourth-party plaintiffs then filed a fourth-party complaint against the fourth-party defendants, Randal Roberge and Michael Simeone (collectively the "fourth-party defendants"), pursuant to Rule 14, for indemnification and contribution in the event they are held liable to the third-party plaintiffs or the plaintiffs.  (See dkt. entry no. 103, Am. 4th Party Compl.)[1]

The defendants now move for summary judgment in their favor and against the plaintiffs, pursuant to Rule 56 (the "122 Motion").  (See dkt. entry no. 122-1, Defs.' Notice of Mot.)  The plaintiffs oppose the 122 Motion.  (See dkt. entry no. 127, 122 Mot. Opp'n Br.)

---

[1] The fourth-party plaintiffs also named William Rehm and Gary Porter as fourth-party defendants in the fourth-party complaint, but the claims asserted against them were dismissed.  (See dkt. entry no. 112, Notice of Voluntary Dismissal; dkt. entry no. 134, 6-9-14 Order.)

The third-party defendants move for judgment on the pleadings in their favor and against the third-party plaintiffs, pursuant to Rule 12(c) (the "121 Motion").  (See dkt. entry no. 121, 3d Party Defs.' Notice of Mot.)  The third-party plaintiffs oppose the 121 Motion.  (See dkt. entry no. 126-2, 121 Mot. Opp'n Br.)  The fourth-party defendants counter-move for judgment on the pleadings in their favor and against the third-party defendants, pursuant to Rule 12(c) (the "125 Motion").  (See dkt. entry no. 125-1, 4th Party Defs.' Notice of Mot.)  The fourth-party plaintiffs oppose the 125 Motion.  (See dkt. entry no. 131, 125 Mot. Opp'n Br.)

The Court, for the reasons stated herein, will (1) deny the defendants' motion for summary judgment; (2) grant the third-party defendants' motion for judgment on the pleadings; and (3) deny the fourth-party defendants' motion for judgment on the pleadings without prejudice as moot.

## I.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."  Lamont v. New Jersey, 637 F.3d 177, 181

(3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The burden on the movant may be discharged by pointing out to the district court that there is an absence of evidence supporting the nonmovant's case.  See Celotex, 477 U.S. at 323.

If the movant demonstrates an absence of genuinely disputed material facts, then the burden shifts to the nonmovant to demonstrate the existence of at least one genuine issue for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted).  The nonmovant cannot, when demonstrating the existence of issues for trial, rest upon argument; the nonmovant must show that such issues exist by referring to the record.  See Fed.R.Civ.P. 56(c)(1).

When determining whether a genuine dispute of material fact exists, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  If the nonmovant fails to demonstrate that at least one genuine dispute exists for trial, then the Court must determine whether the movant is entitled to judgment as a matter of law.  See McCann v. Unum Provident, 921 F.Supp.2d 353, 357 (D.N.J. 2013).  "A movant is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party."  Id.

### B.      Rule 12(c) Standard

A party may move for judgment on the pleadings.  Fed.R.Civ.P. 12(c).  "Judgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law."  <u>DiCarlo v. St. Mary. Hosp.</u>, 530 F.3d 255, 259 (3d Cir. 2008).  "The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements."  <u>Id.</u> at 262-63.

## II.      BACKGROUND

The plaintiffs allege that they were employed as commissioned sales representatives by the now-defunct Mortgage Lenders Network USA, Inc. ("MLN"), a mortgage banking company, until approximately February 2007.  (<u>See</u> dkt. entry no. 122-4, Defs.' SOF at ¶ 2; dkt. entry no. 128, Pls.' SOF at ¶ 2.)  The plaintiffs filed the Complaint on February 18, 2010, seeking to hold the defendants personally liable for unpaid commissions they allegedly earned as employees of MLN.  (<u>See</u> Defs.' SOF at ¶ 3; Pls.' SOF at ¶ 3.)  The plaintiffs claim that, sometime prior to February 2007, MLN stopped paying the plaintiffs earned commissions.  (<u>See</u> Defs.' SOF at ¶ 4; Pls.' SOF at ¶ 4.)  The plaintiffs assert claims against the defendants for violations of the WPL and the SRRA.[2]

On February 5, 2007, MLN petitioned for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the District of

---

[2] The parties, at oral argument, agreed that the Court may dismiss with prejudice the plaintiffs' claims asserted against the defendants for violation of the SRRA.  (<u>See</u> dkt. entry no. 133.)  The Court will issue an appropriate order.

Delaware (the "MLN Bankruptcy Case").  (See Defs.' SOF at ¶ 5; Pls.' SOF at ¶ 5.)  On

February 3, 2009, the Bankruptcy Judge entered an Order confirming the First Amended Plan

of Liquidation as Modified of MLN under Chapter 11.  (See Defs.' SOF at ¶ 6; Pls.' SOF at ¶

6.)  On July 19, 2011, the Bankruptcy Judge entered an Order approving the final distributions,

including distributions to most of the plaintiffs, in the MLN Bankruptcy Case.  (See Defs.'

SOF at ¶ 7; Pls.' SOF at ¶ 7.)

On November 22, 2010, the third-party plaintiffs filed a third-party complaint against

the third-party defendants, alleging that the third-party defendants were executive officers,

managers, agents and/or supervisors of MLN, and that in the event the Court "grants the relief

requested by the Plaintiffs in their Complaint and requires [the third-party plaintiffs] to pay

damages to the Plaintiffs, then [the third-party plaintiffs] are entitled to indemnification and/or

contribution from [the third-party defendants]."  (See 3d Party Compl. at ¶¶ 7, 50, 57.)  On

November 14, 2012, the fourth-party plaintiffs filed an amended fourth-party complaint

against the fourth-party defendants, alleging that the fourth-party defendants were officers and

members of the executive committee of MLN, and that they participated in the decision to

withhold commissions and other compensation from the plaintiffs.  (See 4th Party Compl. at

¶¶ 31, 34, 37, 40, 57, 63.)  The fourth-party plaintiffs further allege that, as a result of this,

they are entitled to indemnification and/or contributions from the fourth-party defendants.

(See id. at 58, 64.)

## III.   ANALYSIS

The Court will consider the following three motions in this Memorandum Opinion.

First, in the 122 Motion, the defendants move for summary judgment in their favor and

against the plaintiffs, pursuant to Rule 56.  Second, in the 121 Motion, the third-party

defendants move for judgment on the pleadings in their favor and against the third-party

plaintiffs, pursuant to Rule 12(c).  Third, in the 125 Motion, the fourth-party defendants

counter-move for judgment on the pleadings in their favor and against the fourth-party

plaintiffs, pursuant to Rule 12(c).

### A.    The 122 Motion

The defendants argue that they are entitled to summary judgment because "the [WPL]

contains a two year statute of limitations barring the Plaintiffs' untimely claims filed more

than three (3) years after termination of their employment with their former employer

[MLN]."  (See dkt. entry no. 122-3, Defs.' 122 Br. at 1.)  The defendants further argue that,

should the Court deny the 122 Motion, the Court should "enter an Order ruling that the

Plaintiffs are collaterally estopped from seeking damages from [the defendants] in excess of

amounts they sought for the same alleged injury in a previous and related matter in the United

States Bankruptcy Court for the District of Delaware in the MLN Bankruptcy Case."  (Id.)

### 1.    Statute of limitations

The Supreme Court of New Jersey has not yet considered the limitations period

applicable to claims arising under the WPL.  To guide our analysis, we first reflect on a recent

decision by the United States Court of Appeals for the Third Circuit, wherein the Court stated:

> As the District Court noted, the Pennsylvania Supreme Court has not yet
> spoken to the issue presented in this case; therefore, "we must attempt to
> predict how that tribunal would rule."  U.S. Underwriters Ins. Co. v. Liberty
> Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir.1996).  In doing so, we give due
> deference to the decisions of intermediate state courts. See id. (quoting
> Winterberg v. Transp. Ins. Co., 72 F.3d 318, 322 (3d Cir.1995)).  State
> appellate decisions, however, are not controlling: "while we may not ignore the

decision of an intermediate appellate court, we are free to reach a contrary result if, by analyzing other persuasive data, we predict that the State Supreme Court would hold otherwise."  Gruber v. Owens–Illinois Inc., 899 F.2d 1366, 1369 (3d Cir.1990) (alterations, internal quotation marks, and citation omitted). Such persuasive data may include, inter alia, "what the Pennsylvania Supreme Court has said in related areas" and the 'decisional law' of the Pennsylvania intermediate courts."  Id. at 1369–70.

Our precedent, therefore, is clear that a federal court interpreting state law may discount state appellate decisions it finds flawed, if it predicts the state supreme court would reach a contrary result.

In re Makowka, No. 13-3469, 2014 WL 2566084, at *3-4 (3d Cir. June 9, 2014).

The defendants here rely on an unpublished decision of the New Jersey Appellate Division – and ask the Court to do the same – in arguing that the WPL is governed by a two-year statute of limitations.  (See id. at 10-11.)  See Chavarriaga v. Ross Pub. Affairs Grp., Inc., No. A-5339-09T3, 2011 WL 2713466, at *1 (N.J. App. Div. July 14, 2011).  In Chavarriaga, the "plaintiff maintain[ed] that she was entitled to receive time-and-a-half for overtime hours she worked at [Ross], pursuant to N.J.S.A. 34:11-56a4, and that Ross withheld her overtime compensation in violation of N.J.S.A. 34:11-4.2."  See Chavarriaga, 2011 WL 2713466, at *4 (footnote omitted).  The defendant argued, inter alia, that the claim was time-barred.  See id. The court found that "[t]he facts alleged by plaintiff support a claim for violation of N.J.S.A. 34:11–56a4, requiring payment of overtime, and N.J.S.A. 34:11–4.2, requiring payment of the full amount of wages due on regular pay days, not a claim for withholding or diverting wages under N.J.S.A. 34:11–4.4 as alleged by plaintiff in the amended complaint."  Id. at *5.  The court then found that the claims were not time-barred because, although N.J.S.A. 34:11-25.1 employs a two-year statute of limitations, the plaintiff's "Wage Act claim relates back to the

original complaint, which was filed . . . within the two-year statute of limitations." See id. at *13-15.[3]

The plaintiffs argue that Chavarriaga "merely restated the rule under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq. ('WHL'), and more specifically 34:11-56a4 with the explicit two year statute of limitations set forth in 34:11-56a25.1, and not the [WPL], at issue here." (See 122 Mot. Opp'n Br. at 2-3.) The plaintiffs further argue that this case revolves around a claim for unpaid regular wages under the WPL, unlike Chavarriaga, which contained a claim for unpaid overtime wages governed by the WHL. (See id. at 3.)

The Court agrees with the plaintiffs and finds that this case is distinguishable from Chavarriaga. Though the Chavarriaga court stated that "[a] claim for failure to pay wages or overtime compensation is time-barred if the claim 'has arisen more than two years prior to the commencement of an action' for recovery," there can be no mistaking that the claims in Chavarriaga involved an employer's withholding of unpaid overtime wages and travel expenses, not regular wages. See Chavarriaga, 2011 WL 2713466, at *4, 14 (quoting N.J.S.A. 34:11-56a25.1). That court did not contemplate whether the two-year statute of limitations found in the WHL should be imputed to the WPL. Any discussion in Chavarriaga regarding whether the two-year statute of limitations applies to N.J.S.A. 34:11-4.2 should be construed as dicta, as the court's holding was concerned solely with whether the plaintiff's WHL claim related back to the original complaint. See id. at *12-16.

---

[3] The court in Chavarriaga referenced the "Wage Act" and the "New Jersey Wage Payment Act." In doing so, the court was referring to the entire statute, N.J.S.A. 34:11-1 to -67. See id. at *1. The terms "Wage Act" and the "New Jersey Wage Payment Act" should not be confused with the WPL.

The Court, rather, is persuaded by the New Jersey Appellate Division's reasoning in another case.  See Troise v. Extel Commc'ns, Inc., 345 N.J. Super. 231 (N.J. App. Div. 2001). In Troise, the court considered "whether a two or six year limitations period applies to an employee's private cause of action for underpayment of the wages required by the Prevailing Wage Act (the ["PWA"]), N.J.S.A.34:11-56.25 to -56.46."  Id. at 233-34.[4]  The court provided the following rationale in concluding that an employee has six years to bring a claim for additional wages under the PWA:

> The Prevailing Wage Act does not contain any express time limitation upon the filing of a private civil action under N.J.S.A. 34:11-56.40.  It simply authorizes an employee who has received less than the prevailing wage to bring a civil action for recovery of any additional wages owed by the employer.
>
> When the Legislature creates a statutory cause of action without including a limitations provision, a court will apply the general limitations provision which governs that category of claim.  See McGrogan v. Till, 167 N.J. 414, 420-24, 771 A.2d 1187 (2001); Montells v. Haynes, 133 N.J. 282, 291-95, 627 A.2d 654 (1993).  The determination of what statute of limitations applies does not "turn on the complaint-specific legal theories that plaintiffs plead, but rather on the nature of the injuries generally identified with the specific cause of action." McGrogan, supra, 167 N.J. at 423, 771 A.2d 1187.
>
> Applying this test, the Court concluded in Montells that a private cause of action under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, which like the Prevailing Wage Act does not contain its own limitations provision, is subject to the two-year limitations period provided by N.J.S.A. 2A:14-2 for "injury to the person" rather than the six-year limitation period provided by N.J.S.A. 2A:14-1 for breach of contract and tortious injury other than injury to the person.  The Court observed that "[a]lthough LAD . . . vindicates economic rights and some rights that sound in contract, the statute strikes directly at conduct that injures the personhood of another."  133 N.J. at

---

[4] "The Prevailing Wage Act requires every contract for 'any public work' in excess of a threshold amount to 'contain a provision' stating that the workers 'shall be paid not less than [the] prevailing wage rate.'"  Id. at 235 (quoting N.J.S.A. 34:11-56.27.)

293, 627 A.2d 654.  Accordingly, the Court concluded that "the statute of limitations for personal-injury claims more closely comports with the purpose of LAD" than the six-year limitations period which governs claims for breach of contract and other economic harm.  Id. at 292, 627 A.2d 654.

In contrast, Wittek's claim for additional wages based on Extel's alleged violation of the Prevailing Wage Act is clearly a claim for breach of contract or other economic harm.  The [PWA] specifically requires the inclusion of the prevailing wage in any contract for public work above a threshold amount, N.J.S.A. 34:11-56.27, 56.28, and because the purpose of the [PWA] is to protect employees on public projects, N.J.S.A. 34:11-56.25, the employees are third-party beneficiaries of this statutorily mandated contractual provision. Moreover, the injury suffered by an employee who does not receive the prevailing wage is purely economic; the only damages the employee may recover is "the full amount of [the] prevailing wage . . . together with costs and such reasonable attorney's fees as may be allowed by the court." N.J.S.A. 34:11-56.40.  Therefore, in the absence of a legislative directive to apply another more specific limitations provision, we are satisfied that a private cause of action under the [PWA] is subject to the six-year limitations period provided by N.J.S.A. 2A:14-1 for breach of contract and tort claims for economic harm.

Id. at 236-38 (emphasis omitted).

The Court is persuaded by Troise's reasoning and will "apply[] the general limitations provision which governs [the] category of claim."  See id. at 236.  Unlike in Montells, where the court found that the LAD "strikes directly at conduct that injures the personhood of another," and thus is subject to a two-year statute of limitations, the plaintiffs here are seeking only to vindicate their economic rights through recovery of unpaid, accrued commissions. See id. at 237.  As the nature of the injuries identified with the plaintiffs' cause of action are more analogous to breach of contract than injury to the person, the Court finds that a private cause of action under the WPL is subject to the six-year statute of limitations that is provided by N.J.S.A. 2A:14-1 for breach of contract claims for economic harm.  See id. at 237-38.

11

The Court similarly rejects the defendants' argument that the two-year statute of limitations found in N.J.S.A. 34:11-56a25.1 should be imputed to the WPL.  At oral argument, the defendants' counsel stressed that the WPL does not itself explicitly contain a private right of action, so a plaintiff's private right of action under the WPL is found in N.J.S.A. 34:11-56a25.  The defendants' counsel thus argued that the two-year statute of limitations found in N.J.S.A. 34:11-56a25.1 should be imputed to the WPL.  This argument fails for several reasons.

As an initial matter, N.J.S.A. 34:11-56a25 – which is entitled "Civil action by employee to recover amount of minimum wage less amount paid" – is a part of the Wage and Hour Law.  The WPL has its own private right of action, which is located in N.J.S.A. 34:11-4.7:

> [E]ach and every employee with whom any agreement in violation of this section shall be made by any such employer, or the agent or agents thereof, shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State.

N.J.S.A. 34:11-4.7.  It could be argued that the right N.J.S.A. 34:11-4.7 confers on an employee to maintain a private cause of action serves exclusively to provide a private right of action by an employee against an employer for wages where an agreement is made to pay such compensation other than as provided in the act.  Cf. Winslow v. Corporate Express, Inc. 364 N.J. Super. 128, 136-37 (N.J. App. Div. 2003).  The Winslow court considered a similar issue in determining whether the private right of action extends to N.J.S.A. 34:11-4.6(b), as that particular section "prohibits an employer from failing to notify its employees of any

'change[ ] in . . . pay rates' and thus does not involve an 'agreement' between the employer and its employee."  See id. at 136.  The court stated:

> [W]e do not perceive any reason to accord N.J.S.A. 34:11-4.7 this kind of restrictive, literal reading.  "[S]tatutes are to be read sensibly rather than literally[,]"  Schierstead v. City of Brigantine, 29 N.J. 220, 230, 148 A.2d 591, 596 (1959), and if a literal interpretation will not achieve the evident legislative purpose, "the words used may be expanded or limited according to the manifest reason and obvious purpose of the law."  Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339, 342 (1956).  There is no significant difference between a violation of the Wage Payment Law involving an employer's "agreement" with its employees regarding wages and a violation involving an employer's unilateral act, such as a reduction in the rate of compensation without giving prior notice to the employees.

Id. at 136-37.  The defendants' purported failure to pay accrued commissions to the plaintiffs here is analogous to the Winslow employer's decision to reduce the rate of compensation without giving prior notice to the employees.  It therefore can be argued that the private right of action in N.J.S.A. 34:11-4.7 is available to the plaintiffs in this case.

The Court furthermore observes that N.J.S.A. 34:11-66 may operate as a "catch-all" clause, creating a private right of action for a claim where the statute might otherwise be silent.  See N.J.S.A. 34:11-66 (stating that "[n]othing in this article shall prevent the claimant from instituting an action for his claim in any court of competent jurisdiction or be construed to deny or limit the right of the plaintiff or defendant to a trial by jury"); see also Mulford v. Computer Leasing, Inc., 334 N.J. Super. 385, 394 (N.J. Super. Ct. 1999) ("Indeed, in addition to the implied private right of action already discussed, there is an express provision

authorizing an employee to institute "an action for his claim in any court of competent jurisdiction.") (citing N.J.S.A. 34:11-66).

The Court lastly considers case law that – though nonbinding – convincingly argues that the WPL "impliedly confers on employees a private right of action in court against employers to protect and enforce their rights thereunder, as a remedy in addition to the penal and administrative sanctions and administrative wage collection proceedings, provided by other sections thereof." See Mulford, 334 N.J. Super. at 394 (concluding that the WPL is "intended to allow a private right of action (a civil action) for a violation thereof to the employee against the employer and its managing officers for wages not paid as provided therein") (internal parenthetical omitted).  In finding that the statute implies a private right of action, the Mulford court stressed the purpose of the statute: "Employees are the obvious special beneficiaries of the statute; and to allow the civil action will plainly further its purpose."  See id.

> Troise is also persuasive on this issue:
>
> We also reject Extel's argument that the two-year limitation provision that governs private causes of action under the Wage and Hour Law, N.J.S.A. 34:11-56a to -56a30, should be read into the Prevailing Wage Act because the two laws have similar purposes.  The relevant section of the Wage and Hour Law provides:
>
> > No claim for unpaid minimum wages, unpaid overtime compensation, or other damages under this act shall be valid with respect to any such claim which has arisen more than 2 years prior to the commencement of an action for the recovery thereof.
>
> [N.J.S.A. 34:11-56a25.1.]

Extel argues that the phrase "or other damages under this act" in this section of the Wage and Hour Law includes damages claimed under the Prevailing Wage Act.

An examination of the legislative history and language of the Wage and Hour Law and Prevailing Wage Act shows that this argument is clearly without merit. The Wage and Hour Law was enacted in 1966, L. 1966, c. 113, three years after enactment of the Prevailing Wage Act in 1963, L. 1963, c. 150. The Wage and Hour Law includes a provision authorizing private causes of action by employees to recover the full amount of wages required under the law, N.J.S.A. 34:11-56a25, which is substantially similar to N.J.S.A. 34:11-56.40. In its original form, the Wage and Hour Law did not contain any limitations provision, but a little more than a year after enactment, the law was amended to add a two-year statute of limitations with respect to private causes of action, L. 1967, c. 216. However, neither the original Wage and Hour Law nor the 1967 amendment includes any reference to the Prevailing Wage Act. Thus, even though the language of the two laws is similar in many respects, they are separate and distinct legislative enactments. Consequently, the phrase "other damages under this act" in N.J.S.A. 34:11-56a25.1 applies only to a claim under the Wage and Hour Law, not to a claim under the Prevailing Wage Act.

In addition, Extel argues that because the Wage and Hour Law and Prevailing Wage Act are both designed to protect employees' economic well-being, the laws must be read in para materia. However, "[t]he rule that statutes in para materia are to be construed together . . . is merely an aid to the interpretation of doubtful or ambiguous statutes[.]" International Bhd. of Elec. Workers Local No. 1470 v. Gillen, 174 N.J.Super. 326, 329, 416 A.2d 446 (App.Div.1980). "The doctrine is not invoked to engraft the terms of one statute into another merely because the general subject matters of the two enactments are similar." Id. at 330, 416 A.2d 446. In fact, where the Legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent. See Smith v. Township of Hazlet, 63 N.J. 523, 527, 309 A.2d 210 (1973).

Id. at 239-40 (emphasis and footnote omitted). The Court therefore declines to find that the

two-year statute of limitations found in N.J.S.A. 34:11-56a25.1 should be imputed to the

WPL.

15

Because the Court finds that a private cause of action under the WPL is subject to the six-year statute of limitations provided by N.J.S.A. 2A:14-1 for claims for breach of contract and other economic harm, the Court will deny the defendants' motion for summary judgment. (See 122 Motion.)

### 2.    Collateral estoppel

The defendants argue that, should the Court deny the 122 Motion, the Court should "enter an Order ruling that the Plaintiffs are collaterally estopped from seeking damages from [the defendants] in excess of amounts they sought for the same alleged injury in a previous and related matter in the United States Bankruptcy Court for the District of Delaware in the MLN Bankruptcy Case." (Defs.' 122 Br. at 1.)  The defendants contend that "[t]he plaintiffs here seek amounts far in excess of amounts in the MLN Bankruptcy Plan."  (Id. at 18.) Collateral estoppel, or issue preclusion:

> proscribes relitigation when the identical issue already has been fully litigated. Issue preclusion may be invoked when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra, 983 F.2d 495, 505 (3d Cir. 1992).

The Court finds that the plaintiffs are not estopped from seeking damages from the defendants in excess of the amounts sought in the MLN Bankruptcy Case.  As an initial matter, at least one of the plaintiffs against whom the bar is asserted was not a party, or in privity with a party, to the MLN Bankruptcy Case, because – as illustrated by the plaintiffs at

oral argument – there was one plaintiff who did not file a proof of claim in the MLN Bankruptcy Case, and thus did not receive a priority or nonpriority payment. (See dkt. entry no. 133, 6-6-14 Oral Arg. Minute Entry.)[5] The plaintiffs also have not had a full and fair opportunity to litigate the issue of damages. In the MLN Bankruptcy Case, the plaintiffs were constrained by the existence of a preference limit. See 11 U.S.C. § 507. This is essentially a cap on what the plaintiffs could have individually recovered in the MLN Bankruptcy Case. Given that the plaintiffs could not recover the full amount of their alleged damages in the MLN Bankruptcy Case, the plaintiffs were not incentivized to assert claims for the full amount of their damages. Because the plaintiffs have not had a full and fair opportunity to prove the full amount of their damages, and because at least one of the plaintiffs was not a party to the MLN Bankruptcy Case, the Court declines to find that they are collaterally estopped from seeking damages from the defendants in excess of the amounts sought in the MLN Bankruptcy Case.

### B.     The 121 Motion

The third-party defendants argue that they are entitled to judgment on the pleadings pursuant to Rule 12(c) because the third-party plaintiffs' claims have no basis in law. (See dkt. entry no. 121-4, 3d Party Defs.' 121 Br. at 1.) The third-party defendants specifically argue that "while Rule 14 permits the impleader of parties who may be liable to the original defendant, it does not permit a defendant to implead a third party merely because he may be liable to the plaintiff." (Id.) The third-party defendants further contend:

---

[5] Because the collateral estoppel test fails for other reasons, the Court need not delve into whether the plaintiffs were parties, or were in privity with a party, in the MLN Bankruptcy Case.

> "[T]he crucial characteristic of a Rule 14 third-party claim is that the original defendant is attempting to transfer to the third-party defendant all or part of the liability asserted against him by the original plaintiff." <u>Ryan v. Collucio</u>, 183 F.R.D. 420, 422 (D.N.J. 1998) . . . .  In turn "[a] third party claim is not appropriate where the defendant and putative third party plaintiff say[], in effect, 'It was him, not me.'" <u>Chao v. New Jersey Licensed Beverage Association, Inc.</u>, 461 F. Supp. 2d 303, 306 (D. N.J. 2006) . . . .  "Such a claim is viable only where a proposed third party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff.'" <u>Chao</u>, 461 F.Supp. 2d at 306-07 . . . .

(<u>Id.</u> at 6-7.)  The third-party defendants then argue that the third-party plaintiffs do not possess the substantive right to seek contribution or indemnification from the third-party defendants. (<u>See</u> <u>id.</u> at 9-11.)

The third-party plaintiffs counter that the 121 Motion should be denied based on the following:

> (1) [Rule] 14 does not bar [the third-party plaintiffs'] claims against the Third Party Defendants; (2) New Jersey substantive law must be applied to evaluate the legal sufficiency of [the third-party plaintiffs'] claims for contribution and indemnification against the Third Party Defendants; (3) [the third-party plaintiffs] have properly alleged a claim for contribution against the Third Party Defendants pursuant to the New Jersey Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1 <u>et seq.</u>; and (4) [the third-party plaintiffs] have properly alleged a claim for indemnification against the Third Party Defendants pursuant to New Jersey common law.

(121 Mot. Opp'n Br. at 1.)

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."  Fed.R.Civ.P. 14(a)(1).  A claim may be asserted under Rule 14(a) "only when the third-party defendant's

liability is derivative or secondary."  Chao v. N.J. Licensed Beverage Ass'n, Inc., 461

F.Supp.2d 303, 306 (D.N.J. 2006).  The Chao court stated:

> [A] third-party claim under Rule 14 can be maintained only if the liability
> asserted is in some way derivative of the main claim.  A third party cannot be
> joined simply because that party may be solely liable to the plaintiff. . . .
> Therefore, a third-party action is proper only when a right to relief exists under
> the applicable substantive law.  A third party claim is not appropriate where the
> defendant and putative third party plaintiff say, in effect, "It was him, not me."
> Such a claim is viable only where a proposed third party plaintiff says, in effect,
> "If I am liable to plaintiff, then my liability is only technical or secondary or
> partial, and the third party defendant is derivatively liable and must reimburse
> me for all or part . . . of anything I must pay plaintiff."

Id. at 306-07.  The Court acknowledges that the parties vehemently dispute whether the third-

party complaint violates Rule 14, however, the Court need not reach this issue.  The Court

rather will begin by analyzing the substance of the third-party plaintiffs' contribution and

indemnification claims to ascertain whether these claims sufficiently allege secondary liability

such that they may be brought in accordance with Rule 14(a).

"Being procedural in nature, Rule 14 itself does not create a right of contribution or

indemnity; rather, a third-party plaintiff's right to relief must be cognizable under the

substantive law."  Ford Motor Co. v. Edgewood Props., Inc., No. 06-1278, 2007 WL

4526594, at *10 (D.N.J. Dec. 18, 2007).  The third-party plaintiffs allege in the third-party

complaint that the third-party defendants were executive officers, managers, agents and/or

supervisors of MLN, and that in the event the Court "grants the relief requested by the

Plaintiffs in their Complaint and requires [the third-party plaintiffs] to pay damages to the

Plaintiffs, then [the third-party plaintiffs] are entitled to indemnification and/or contribution

from [the third-party defendants]."  (See 3d Party Compl. at ¶¶ 7, 50, 57.)  The third-party

plaintiffs argue that these allegations in the third-party complaint set forth valid claims for contribution and indemnification against the third-party defendants.  (See 121 Mot. Opp'n Br. at 16.)

The third-party plaintiffs argue that they have set forth a valid claim of contribution against the third-party defendants under the New Jersey Joint Tortfeasors Contribution Act ("NJJTCA").  (See id. at 17.)  See N.J.S.A. 2A:53A-1 et seq.  As noted by the third-party defendants, the third-party plaintiffs: (1) did not assert a claim for contribution under the NJJTCA in the third-party complaint, rather, they first asserted a claim for contribution under the NJJTCA in their 121 Motion opposition papers; and (2) do not cite any case law in which a court has permitted a defendant, in an action brought pursuant to the WPL, to bring a claim for contribution.  (See dkt. entry no. 130, 3d Party Defs.' 121 Reply Br. at 5.)  The Court notes that whether, in an action brought pursuant to the WPL, a party can bring a claim of contribution against another party under the NJJTCA, is a matter of first impression.

The NJJTCA defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  N.J.S.A. 2A:53A-1 (emphasis added).  The Court finds that the third-party plaintiffs may not seek contribution under the NJJTCA because the third-party defendants, as a matter of law, cannot be held liable as joint tortfeasors.  See Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc., No. 00-2231, 2002 WL 2013925, at *2 (E.D. Pa. Aug. 29, 2002) (holding that – where underlying action involved contract-based claims for breach of warranty – third-party plaintiff could not seek contribution from third-party defendant under NJJTCA because third-party defendant could not be held

liable as joint tortfeasor).  The Court finds the <u>Longport Ocean Plaza Condominium</u> court's

reasoning on this issue to be instructive:

> Given the rather straightforward language of the statute, it is not surprising that
> courts dismiss contribution claims when the party against whom the claim is
> asserted may not, as a matter of law, be held liable as a joint tortfeasor.  <u>See,
> e.g.</u>, <u>Resolution Trust Corp. v. Moskowitz</u>, 845 F.Supp. 247, 251 (D.N.J.1994)
> (dismissing cross-claims for contribution against defendant because the only
> claim asserted against it by plaintiff was grounded in contract, not tort),
> <u>vacated, in part, on other grounds</u>, 1994 WL 475811 (D.N.J. Aug. 31, 1994). . . .

> As the term "<u>joint</u> tortfeasors" and the language of the statute indicate, both the
> party against whom a claim for contribution is asserted as well as the party
> <u>asserting</u> the claim must be tortfeasors.  However, the only claims asserted
> against EFCO are grounded in contract, and EFCO itself admits that it may not
> be held liable as a joint tortfeasor in this case.  Therefore, just as contribution
> claims <u>against</u> EFCO may not be maintained, contribution claims <u>by</u> EFCO
> may also not be maintained.

> EFCO argues that the New Jersey Supreme Court's decision in <u>Dunn v.
> Praiss</u>, 139 N.J. 564, 656 A.2d 413 (1995), is controlling, and permits a claim
> for contribution in this case.  The Court disagrees.  In that case, a physician-
> provider who was guilty of medical malpractice sought contribution from his
> health maintenance organization ("HMO") on the basis of the HMO's
> independent breach of contractual duty to the patient.  The court, carving out an
> exception to the general rule that contribution must be sought between parties
> jointly liable in tort, held that such claims were permitted.  However, it did so
> carefully limiting its holding based on (1) the harm suffered and (2) the
> particular nature of the breach of contractual duty in that case.  The instant case
> is dissimilar from <u>Dunn</u> on these matters, and therefore <u>Dunn</u> is inapposite.

> First, the <u>Dunn</u> court limited its holding to cases in which the harm suffered by
> the plaintiff was personal injury.  The court defined the question before it as:
> "Can there be contribution between a party whose breach of contract is the
> proximate cause <u>of personal injury</u> and another party whose negligence is a
> proximate cause of the same injury?"  <u>Dunn</u>, 139 N.J. at 575, 656 A.2d at
> 419 (emphasis added).  It went on to "agree . . . that it is appropriate <u>in this
> case</u> to apportion responsibility based on a breach on contract that is alleged to
> have proximately caused <u>personal</u> <u>injury</u>."  <u>Dunn</u>, 139 N.J. at 577, 656 A.2d at
> 420 (emphasis added).  In the instant case, there is no similar allegation of
> personal injury by any party.

> Second, the court stressed the fact that the HMO's contractual duty was closely analogous to the tort duties imposed on the physician-provider.  The court held that "[i]n the context of this case in which the breach of contractual duty appears to parallel closely the fault-based duty of care imposed on a health care provider, it is appropriate to allow for contribution . . . In this case, the alleged failure of the HMO is more like a negligent act."  Id.  In the case at bar, the contractual duties imposed on EFCO are in no way similarly parallel to the fiduciary duties imposed on the Board.
>
> As a result, EFCO's claims for contribution against the Board must be dismissed.

Id. at *2-3.

As discussed supra, the nature of the injuries identified with the plaintiffs' cause of action are more analogous to breach of contract than injury to the person.  There is no allegation of personal injury by any party.  Because – an in Longport Ocean Plaza Condominium – the claims asserted against the defendants are analogous to claims sounding in contract, the third-party defendants cannot be held liable as joint tortfeasors.  See id. at *2.  The third-party plaintiffs' claims for contribution against the third-party defendants must therefore be dismissed.

The third-party plaintiffs next argue that they have set forth valid claims of indemnification against the third-party defendants.  (See 121 Mot. Opp'n Br. at 21.)  The third-party plaintiffs ask this Court to hold that they have set forth a claim for common law indemnification.  (See id. at 24.)  The Court declines to find as such.

"A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability."  Echevarias v. Lopez, 240 N.J.

Super. 104, 112 (N.J. App. Div. 1990) (quoting Restatement (First) of Restitution § 96 (1937)).  Common law indemnification is therefore available under New Jersey law to a person who is not at fault, but has become responsible in tort for the conduct of another.  See Longport Ocean Plaza Condo., 2002 WL 2013925, at *4; see also Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 159 A.2d 97, 110 (N.J. 1960) (citing Restatement (First) of Restitution § 96 (1937)).  In order to assert their claim for common law indemnification, the third-party plaintiffs must be subject to tort liability that is actually the third-party defendants' fault.  The only claims asserted against the third-party plaintiffs (the defendants), however, are analogous to claims sounding in contract.

There is also no "special legal relationship" that would permit the defendants to assert a claim for common law indemnification.  See Katz v. Holzberg, No. 13-1726, 2013 WL 5946502, at *2 (D.N.J. Nov. 4, 2013) ("Indemnification is available under New Jersey law in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification.").  The third-party plaintiffs' claims for common law indemnification against the third-party defendants must therefore be dismissed.

The third-party plaintiffs' contribution and indemnification claims do not sufficiently allege secondary liability such that they are brought in accordance with Rule 14(a).  The Court thus finds that the third-party defendants have clearly established that there are no material issues of fact, and that they are entitled to judgment as a matter of law.  The Court will therefore grant the 121 Motion.

23

**C.      The 125 Motion**

As the Court intends to grant the 121 Motion, the Court will deny the 125 Motion without prejudice as moot.

**IV.      CONCLUSION**

The Court, for good cause appearing will: (1) deny the defendants' motion for summary judgment; (2) grant the third-party defendants' motion for judgment on the pleadings; and (3) deny the fourth-party defendants' motion for judgment on the pleadings without prejudice as moot.  The Court will issue and appropriate order and judgment.

   s/ Mary L. Cooper      
**MARY L. COOPER**
United States District Judge

Dated: July 7, 2014