NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL MEYERS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MITCHELL L. HEFFERNAN, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 12-2434 (MLC)<br><br>**MEMORANDUM OPINION** |
| MITCHELL L. HEFFERNAN, et al.,<br><br>    Third-Party Plaintiffs,<br><br>    v.<br><br>STEVEN PATTON, et al.,<br><br>    Third-Party Defendants. | |
| STEVEN PATTON, et al.,<br><br>    Fourth-Party Plaintiffs,<br><br>    v.<br><br>RANDAL ROBERGE, et al.,<br><br>    Fourth-Party Defendants. | |

**COOPER, District Judge**

Plaintiffs – Michael Meyers, David Rundella, David Bosefski, Scott Kerico, Marc Ambrose, Lisa Macone, Johanna Curley, and Jeffery DePalma – (collectively the

"plaintiffs") brought this action against defendants, Mitchell L. Heffernan and James E. Pedrick (collectively the "defendants" or the "third-party plaintiffs").  Plaintiffs allege that defendants failed to pay them earned commissions, in violation of the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq. (the "WPL") and the Sales Representatives' Rights Act, N.J.S.A. 2A:61A-1 et seq. (the "SRRA").  (See dkt. entry no. 1, Compl. at 1.)  The third-party plaintiffs filed a third-party complaint against the third-party defendants, Steven Patton and Paul Impagliazzo (collectively the "third-party defendants" or the "fourth-party plaintiffs"), pursuant to Federal Rule of Civil Procedure ("Rule") 14, for indemnification and contribution in the event they are held liable to plaintiffs in the main action.  (See dkt. entry no. 34, 3d Party Compl.)  The fourth-party plaintiffs then filed a fourth-party complaint against the fourth-party defendants, Randal Roberge and Michael Simeone (collectively the "fourth-party defendants"), pursuant to Rule 14, for indemnification and contribution in the event they are held liable to the third-party plaintiffs or plaintiffs.  (See dkt. entry no. 103, Am. 4th Party Compl.)[1]

Defendants now ask this Court to certify part of an order entered on July 8, 2014 ("7-8-14 Order") for appellate review by the United States Court of Appeals for the Third Circuit ("Third Circuit") pursuant to 28 U.S.C. § ("Section") 1292(b) and for a stay.  (See dkt. entry no. 138, Mot. for Leave to Appeal; dkt. entry no. 136, 7-8-14 Order.) Specifically, defendants move "[to] stay the matter pending appellate review of: (a) whether a two (2) year or six (6) year statute of limitations applies to Plaintiffs' claims under the

---

[1] The fourth-party plaintiffs also named William Rehm and Gary Porter as fourth-party defendants in the fourth-party complaint, but the Court dismissed the claims asserted against them.  (See dkt. entry no. 112, Notice of Voluntary Dismissal; dkt. entry no. 134, 6-9-14 Order.)

2

[WPL]; and (b) whether Plaintiffs are collaterally estopped from claiming damages in excess of those sought in the bankruptcy proceeding of their former employer, . . . less any distributions they received in the bankruptcy proceeding." (See dkt. entry no. 138-3, Defs.' Br. at 1.)  Plaintiffs oppose the motion. (See dkt. entry no. 140, Pls.' Br. in Opp'n.)  The Court determines the motion on briefs without an oral hearing, pursuant to Local Civil Rule 78.1(b).  For the reasons stated herein, the Court will deny the motion for certification and for a stay.

## I. BACKGROUND

Plaintiffs allege that they were employed as commissioned sales representatives by the now-defunct Mortgage Lenders Network ("MLN"), a mortgage banking company, until February 2007. (See dkt. entry no. 122-4, Defs.' Statement of Facts ("SOF") at ¶ 2; dkt. entry no. 128, Pls.' SOF at ¶ 2.)  Plaintiffs filed the complaint on February 18, 2010, seeking to hold defendants personally liable for unpaid commissions they allegedly earned as employees of MLN. (See Defs.' SOF at ¶ 3; Pls.' SOF at ¶ 3.)  Plaintiffs claim that, sometime prior to February 2007, MLN stopped paying them earned commissions. (See Defs.' SOF at ¶ 4; Pls.' SOF at ¶ 4.)  Plaintiffs asserted claims against defendants for violations of the WPL and the SRRA.  The Court dismissed with prejudice, by consent of the parties, the SRRA claims asserted against defendants. (See 7-8-14 Order.).

MLN petitioned for bankruptcy relief on February 5, 2007 under Chapter 11 of the United States Bankruptcy Code, in the United States Bankruptcy Court for the District of Delaware ("the MLN Bankruptcy Case"). (See Defs.' SOF at ¶ 5; Pls.' SOF at ¶ 5.)  On February 3, 2009, the Bankruptcy Judge entered an order confirming the First Amended

3

Plan of Liquidation as Modified of MLN under Chapter 11.  (See Defs.' SOF at ¶ 6; Pls.' SOF at ¶ 6.)  On July 19, 2011, the Bankruptcy Judge entered an order approving the final distributions, including distributions to most of the plaintiffs, in the MLN Bankruptcy Case. (See Defs.' SOF at ¶ 7; Pls.' SOF at ¶ 7.)

The third-party plaintiffs filed a third-party complaint against the third-party defendants on November 22, 2010, alleging that the third-party defendants were executive officers, managers, agents, or supervisors of MLN, and that in the event the Court "grants the relief requested by Plaintiffs in their Complaint and requires [the third-party plaintiffs] to pay damages to Plaintiffs, then [the third-party plaintiffs] are entitled to indemnification and/or contribution from [the third-party defendants]."  (See 3d Party Compl. at ¶¶ 7, 50, 57.)  On November 14, 2012, the fourth-party plaintiffs filed an amended fourth-party complaint against the fourth-party defendants, alleging that the fourth-party defendants were officers and members of the executive committee of MLN, and that they participated in the decision to withhold commissions and other compensation from plaintiffs.  (See Am. 4th Party Compl. at ¶¶ 31, 34, 37, 40, 57, 63.)  The fourth-party plaintiffs further allege that, as a result of this, they are entitled to indemnification and contributions from the fourth-party defendants.  (See id. at ¶¶ 58, 64.)

The parties then made several motions at the end of 2013.  First, defendants moved for summary judgment in their favor and against plaintiffs, pursuant to Rule 56, on November 8, 2013.  (See dkt. entry no. 122-1, Notice of Mot.)  The Court denied that motion.  (See 7-8-14 Order at 1–2.)  The third-party defendants also moved for judgment on the pleadings in their favor and against the third-party plaintiffs, pursuant to Rule 12(c),

4

on November 8, 2013.  (See dkt. entry no. 121, Notice of Mot.)  The Court granted that motion.  (See 7-8-14 Order at 2.)  Finally, on December 2, 2013, the fourth-party defendants separately moved for judgment on the pleadings in their favor and against the fourth-party plaintiffs, pursuant to Rule 12(c).  (See dkt. entry no. 125-1, Notice of Mot.)  The Court denied that motion without prejudice as moot.  (See 7-8-14 Ord. at 2.)  Further, the Court dismissed the claims asserted against the third-party defendants, Steven Patton and Paul Impagliazzo, and the fourth-party defendants, Randal Roberge and Michael Simeone, and terminated the third-party action and the fourth-party action.  (See id.)  The Court now turns to the motion for certification for an interlocutory appeal and a stay.

## II.     DISCUSSION

### A.     Legal Standards – Section 1292(b)

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

28 U.S.C. § 1292(b).  Thus, to merit a Section 1292(b) certification, the moving party must show that within the Court's order there is (1) a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal will materially advance the ultimate termination of the litigation.  Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974); Kapossy v. McGraw-Hill, Inc., 942

5

F.Supp. 996, 1001 (D.N.J. 1996); see <u>Premick v. Dick's Sporting Goods, Inc.</u>, No. 06-530, 2007 U.S. Dist. LEXIS 11813, at *2 (W.D. Pa. Feb. 20, 2007).  The party moving for certification bears the burden of demonstrating that all three of the statutory prerequisites are met.  See <u>N.V.E., Inc. v. Palmeroni</u>, No. 06-5455, 2012 WL 2020242, at *4 (D.N.J. June 5, 2012); <u>Litgo N.J., Inc. v. Martin</u>, No. 06-2891, 2011 WL 1134676, at *2 (D.N.J. Mar. 25, 2011).

The decision to grant certification "is wholly within the discretion of the courts," even if all three criteria are present.  <u>Bachowski v. Usery</u>, 545 F.2d 363, 368 (3d Cir. 1976) (citation omitted).  Section 1292(b) certification should be used "only in exceptional cases" since it is "a deviation from the <u>ordinary policy</u> of avoiding piecemeal appellate review of trial court decisions which do not terminate the litigation."  <u>Kapossy</u>, 942 F.Supp. at 1001 (quotation omitted) (emphasis added) (citing <u>United States v. Hollywood Motor Car Co.</u>, 458 U.S. 263, 265 (1982)).

Section 1292(b) is intended "to permit decision of legal issues as to which there is considerable question without requiring the parties first to participate in a trial that may be unnecessary."  <u>P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.</u>, 161 F.Supp.2d 355, 358 (D.N.J. 2001) (quotation and citation omitted).  Also, the policies furthered by Section 1292(b) include "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense."  <u>Katz</u>, 496 F.2d at 756.  The statute is not intended, however, "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation."  <u>Milbert v. Bison Labs.</u>, 260 F.2d 431, 433 (3d Cir. 1958).  Further, Section

1292(b) "should not be granted merely because a party disagrees with the rulings of the district judge," but instead there must be genuine doubt about the correct legal standard. Kapossy, 942 F.Supp. at 1001.

### 1. Controlling Question of Law

A controlling question of law, for purposes of Section 1292(b), is "every order which, if erroneous, would be reversible error on final appeal." Katz, 496 F.2d at 755; P. Schoenfeld Asset Mgmt., 161 F.Supp.2d at 358. It is not required that reversal of the order terminate the litigation or that the order be on the claim's merits. Katz, 496 F.2d at 755. "Controlling" means "serious to the conduct of the litigation, either practically or legally." Id. From the practical standpoint, saving the district court's time and the litigants' expenses is "a highly relevant factor." Id. Orders that involve an exercise of discretion may also be considered a controlling question of law if it "truly implicates the policies favoring interlocutory appeal." Id. at 756. Thus, a district court should be guided "by a practical application of those policies, not by a mechanical application of labels such as 'discretionary' and 'nondiscretionary.'" Id.

### 2. Substantial Ground for Difference of Opinion

A difference of opinion, the second Section 1292(b) factor, "must arise out of genuine doubt as to the correct legal standard." P. Schoenfeld Asset Mgmt., 161 F.Supp.2d at 360; Kapossy, 942 F.Supp. at 1001. "Such doubt can stem from conflicting precedent, the absence of controlling law on a particular issues, or novel and complex issues of statutory interpretation." Litgo, 2011 WL 1134676, at *3; see N.J., Dep't of Treasury v. Fuld, No. 09-1629, 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009). The

moving party's mere disagreement with the district court's ruling, however, is not a substantial ground for difference of opinion for Section 1292(b) purposes. Kapossy, 942 F.Supp. at 1001; Hulmes v. Honda Motor Co., Ltd., 936 F.Supp. 195, 208 (D.N.J. 1996), aff'd, 141 F.3d 1154 (3d Cir. 1998).

### 3. Materially Advance Termination of Litigation

A Section 1292(b) certification materially advances the litigation's ultimate termination where the interlocutory appeal will eliminate the need for trial, complex issues, or issues that make discovery more difficult and more expensive. See L.R. v. Manheim Twp. Sch. Dist., 540 F.Supp.2d 603, 613 (E.D. Pa. 2008). A critical factor is whether the interlocutory appeal will cause excessive delay. See Hulmes, 936 F.Supp. at 212 (noting that "[d]elay is a particularly strong ground for denying appeal if certification is sought from a ruling made shortly before trial" (quotation and citation omitted)). Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set. See Kapossy, 942 F.Supp. at 1004 (emphasizing that excessive delay is less likely where the certification question arises "early in the procedural history of the case" and concluding certification would cause excessive delay where the court concluded discovery, decided in limine motions, and scheduled trial). Further, the classic situation for certification is one where the court of appeals "can decide quickly and cleanly without having to study the record." Ahrenholz v. Bd. of Trs. of the Univ. of Ill., 219 F.3d 674, 676–77 (7th Cir. 2000).

### B.   Legal Standards Applied Here

Defendants ask this Court to certify part of the 7-8-14 Order for interlocutory appeal under Section 1292(b).  (See Mot. for Leave to Appeal at 1.)   Specifically, defendants request certification of two issues: "(a) whether a two (2) year or six (6) year statute of limitations applies to Plaintiffs' claims under the WPL; and (b) whether Plaintiffs are collaterally estopped from claiming damages in excess of those sought in the MLN Bankruptcy Case, less any payments they received from the MLN Bankruptcy."   (See Defs' Br. at 4.)

#### 1.   Controlling Question of Law

Defendants request certification for two issues: (1) the appropriate statute of limitations for the WPL claim; and (2) the appropriate damage calculation based on prior distributions from MLN's Bankruptcy Case.   The Court will consider each in turn.

##### a. Statute of Limitations

The Court held in the Memorandum Opinion underlying the 7-8-14 Order that a six year statute of limitations applied to plaintiffs' WPL claim, meaning that plaintiffs timely filed their claims, and rejected the two year period that defendants argued for, which would have barred plaintiffs' claims under the WPL.   (See 7-8-14 Order; dkt. entry no. 135, Mem. Op. at 11.) Recognizing that the Supreme Court of New Jersey had yet to consider the applicable limitations period for claims under the WPL, the Court examined decisions from the intermediate New Jersey state courts.   (See Mem. Op. at 7.)   A case from New Jersey's Appellate Division, Troise v. Extel Communications, persuaded the Court that employees have six years to bring a claim to vindicate their economic rights through recovery of unpaid, accrued commissions.   345 N.J. Super. 231 (N.J. App. Div. 2001).   The Court reasoned that

9

such a claim is more analogous to the general category of claims for breach of contract for economic harms, found at N.J.S.A. 2A:14-1, which provides for a six year statute of limitations, than it is to a claim for injury to a person, which would necessitate a two year limitations period.   (See Mem. Op. at 11.)

Defendants argue that this issue should be certified to the Third Circuit because if "the Third Circuit holds that a two (2) year statute of limitations applies to the matter then Plaintiffs will be unable to assert their remaining WPL claims against [defendants] and the litigation would terminate."   (Defs.' Br. at 9.)   If this Court incorrectly determined the appropriate limitations period, it would be a reversible error and the issue is serious—both practically and legally—to the conduct of the litigation.   Thus, we find that the first element of the three-part Section 1292(b) test is present on the issue of the applicable limitations period.

### b.  Collateral Estoppel and Damages

Defendants in their motion for summary judgment argued that, should the Court deny that motion, the Court should "enter an Order ruling that Plaintiffs are collaterally estopped from seeking damages from [defendants] in excess of amounts they sought for the same alleged injury in a previous and related matter in the United States Bankruptcy Court for the District of Delaware in the MLN Bankruptcy Case."   (See dkt. entry no. 122-3, Defs.' Br. in Support of Summ. J. at 1.)   The Court, in its 7-8-14 Order and corresponding Memorandum Opinion on that motion, held that plaintiffs were not estopped from seeking damages from defendants in excess of the amounts sought in the MLN Bankruptcy Case.   (See Mem. Op. at 16.)   The Court's conclusion originated from several factors.   First, one of plaintiffs in the case did not file a proof of claim in the MLN Bankruptcy Case, and as a result, that individual

did not receive a priority or nonpriority payment as a result of the bankruptcy case.  (See id. at 17.)  Additionally,

> the plaintiffs . . . have not had a full and fair opportunity to litigate the issue of damages.  In the MLN Bankruptcy Case, the plaintiffs were constrained by the existence of a preference limit.  This is essentially a cap on what the plaintiffs could have individually recovered in the MLN Bankruptcy Case.  Given that the plaintiffs could not recover the full amount of their alleged damages in the MLN Bankruptcy Case, the plaintiffs were not incentivized to assert claims for the full amount of their damages.

(Id. (citation omitted)).  Thus, the Court held that plaintiffs were not collaterally estopped or limited by the MLN Bankruptcy Case in terms of the damages they sought in the instant matter.  (See id.)

Defendants now argue that the Court's holding allows plaintiffs to "double dip[]" by allowing them "to [attempt to] obtain greater relief than allowed under the United States Bankruptcy Code."  (Defs.' Br. at 10.)  Defendants claim that all plaintiffs except for one received distributions of priority and nonpriority payments as a part of the MLN Bankruptcy Case.  (Id.)  Thus, if the Third Circuit determines that plaintiffs are collaterally estopped from seeking damages in excess of the amounts sought in the MLN Bankruptcy Case, "then discovery and trial on Plaintiffs' damages are unnecessary and wasteful."  (Id. at 11.)

The first part of Section 1292(b) asks the Court to consider whether the issue is one of such serious legal significance that it will somehow significantly alter the case.  Katz, 496 F.2d at 755.  Given that the damage calculation will affect this litigation at a later stage and will not change any finding of liability, the Court does not find that this issue is serious enough to constitute a "controlling issue of law."

11

### 2. Substantial Ground for Difference of Opinion

#### a. Statute of Limitations

The Court, in its Memorandum Opinion, identified that the "Supreme Court of New Jersey has not yet considered the limitations period applicable to claims arising under the WPL." (Mem. Op. at 7.) As a result, the Court examined decisions from intermediate appellate courts and reviewed several cases from the state of New Jersey. (See id. at 8–11.) The Court previously distinguished the unpublished decision of the New Jersey Appellate Division relied on by defendants in support of their motion for summary judgment, Chavarriaga v. Ross Public Affairs Group, Inc., and will not revisit it here. See No. A-5339-09T3, 2011 WL 2713466 (N.J. App. Div. July 14, 2011). The Court continues to hold that Chavarriaga "involved an employer's withholding of unpaid overtime wages and travel expenses, not regular wages" and any reference to a two year limitations period in that opinion constituted dicta. (Mem. Op. at 9.) See Chavarriaga, 2011 WL 2713466, at *4, 14. Instead, the Court analogized this case to that of Troise and found further support for concluding that a six year limitations period applies in various New Jersey statutes. (See Mem. Op. at 10–15.)

Defendants ask the Court to certify this issue because of conflicting precedent and an absence of authority, which they argue creates "substantial grounds for difference of opinion concerning what statute of limitations applies to the [WPL] claims." (Defs.' Br. at 12.)

This boils down to a disagreement on how the Court applied the law. Such a conflict is inappropriate for interlocutory appeal:

> Section 1292(b) was not designed to secure appellate review of . . . the application of the acknowledged law to the facts of a particular case, matters which are within the sound discretion of the trial court.

In re Schering-Plough Corp., No. 08-397, 2010 WL 2546054, at *4 (D.N.J. June 21, 2010). Defendants merely argue that they disagree with the result the Court reached when applying the law. Such a contention, without contrary authority, fails to constitute the requisite legally sufficient difference of opinion. See id.; Interfaith Cmty. Org. Inc. v. PPG Indus., Inc., 702 F.Supp.2d 295, 319 (D.N.J. 2010); Children First Found., Inc. v. Legreide, No. 04-2137, 2005 WL 3088334, at *8 (D.N.J. Nov. 17, 2005); Burns v. Lavender Hill Herb Farm, No. 01-7019, 2005 WL 545288, at *2 (E.D. Pa. Mar. 2, 2005). Thus, defendants fail to demonstrate "genuine doubt" as to whether the Court applied the correct legal standard. Kapossy, 942 F.Supp. at 1001.

### b. Collateral Estoppel and Damages

The Court held that:

> [b]ecause the plaintiffs have not had a full and fair opportunity to prove the full amount of their damages, and because at least one of the plaintiffs was not a party to the MLN Bankruptcy Case, the Court declines to find that they are collaterally estopped from seeking damages from the defendants in excess of the amounts sought in the MLN Bankruptcy Case.

(Mem. Op. at 17.) While the Bankruptcy Court in the MLN Bankruptcy Case did rule there was a full and fair opportunity to litigate the issues raised in the MLN Bankruptcy Case, "the plaintiffs were constrained [in the MLN Bankruptcy Case] by the existence of a preference limit," which operates as a cap on what plaintiffs could have individually recovered in that proceeding. (Id.) Because plaintiffs could not recover the full amount of their alleged

damages in bankruptcy, they were "not incentivized to assert claims for the full amount of their damages." (Id.)

Defendants continue to disagree with this holding, but the Court will not rehash this argument or the Court's conclusion. (See Defs.' Br. at 13–14.) Defendants further claim, based on Mulford v. Computer Leasing, Inc., that under the WPL, directors and officers of an employer corporation can only be held secondarily liable to the employer corporation's primary liability. (See id. at 14.) See 334 N.J. Super. 385, 399 (N.J. Super. Ct. 1999). Mulford, however, does not address the discrepancy between damages litigated in bankruptcy as compared to damages litigated in a civil lawsuit, which is the question the Court faces here. Thus, the Court disregards defendants' argument, and concludes that defendants have failed to demonstrate that a substantial ground for difference of opinion exists as to the issue of damages.

### 3. Materially Advance Termination of Litigation

#### a. Statute of Limitations

Certification of the issue of the applicable limitations period, held to be six years in the 7-8-14 Order, would materially advance the termination of the litigation, if the Third Circuit reversed this Court and held that, as defendants argue, the limitations period is two years. As the Court previously addressed, however, defendants failed to sufficiently demonstrate the second requirement of Section 1292(b)—substantial ground for difference of opinion—and as a result, the issue will not be certified to the Third Circuit. (See supra II.B.2.a.)

#### b. Collateral Estoppel and Damages

Certification of the 7-8-14 Order on the issue of damages would not materially advance termination of the litigation. As the Court stated, the damage phase of this litigation will

come at a later juncture and limiting that calculation will not advance the end of the litigation or affect the liability determination.  (See supra II.B.1.b.)  Thus, this issue, as it fails to satisfy Section 1292(b), will not be certified for interlocutory appeal.

### III.   CONCLUSION

The Court, for the reasons stated supra, will deny defendants' motion for certification of a part of the 7-8-14 Order and a stay of these proceedings.  The Court will issue an appropriate order.[2]

    s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Dated:     December 19, 2014

---

[2]  The Court, although denying defendants' motion, notes that defendants may now consider pursuing a writ of mandamus before the Third Circuit.   See 28 U.S.C. § 1651(a); Fed.R.App.P. 21.   As the Third Circuit has stated:

> In In re School Asbestos Litigation, 977 F.2d 764, 774 (3d Cir.1992), Judge Becker referred to this court's preference that petitioners seek an interlocutory appeal under 28 U.S.C. § 1292(b) before a writ of mandamus is issued. . . . To the extent that we require a § 1292(b) application as a precondition to the filing of a petition for a writ of mandamus, we note that [the party at issue] has sought 1292(b) certification and has been denied.

Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 991 F.2d 1080, 1083 n.4 (3d Cir. 1993); see In re Chimenti, 79 F.3d 534, 539 (6th Cir. 1996) (stating "the better practice would have been for the [parties at issue] to try first to obtain permissive interlocutory review under § 1292(b)" before seeking writ of mandamus).